UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 CV 6343**

LEE DAVID AUERBACH, on behalf of himself and all others similarly situated,

Plaintiff,

v.

21ST CENTURY HEALTHCARE INC.,

Defendant.

Civil Action No. ___

CLASS ACTION COMPLAINT

*JUDGE SEIBEL*

*FILED 2012 AUG 20 PM 1:27 U.S. DIST...*

Plaintiff, by and through his counsel, Meiselman, Denlea, Packman, Carton & Eberz P.C., respectfully files this Class Action Complaint on behalf of himself and a class of similarly-situated individuals who have purchased in New York State a 21st Century HealthCare Inc. ("21st Century") joint supplement containing glucosamine, chondroitin and/or other ingredients that are falsely labeled and represented to "promote cartilage regeneration."

## NATURE OF THE CASE

1. One of the unfortunate realities of our frail human existence is that joints degenerate as we get older. The universal desire to regain what was lost, combined with the daily pain associated with arthritic or otherwise damaged joints, creates an opportunity for unscrupulous marketers to peddle supplements with the unsubstantiated, but oh-so enticing, promise to "regenerate" cartilage.

2. One such marketer is Defendant 21st Century, which sells a line of glucosamine and chondroitin supplements with the false promise and deceptive warranty that its products "promote cartilage regeneration." As 21st Century is fully aware, however, it is physically and biologically impossible to "regenerate" cartilage that has been lost or damaged.

3. 21st Century sells its products throughout the State of New York by callously taking advantage of consumers' reasonable but unattainable desire to reverse the damage done to their cartilage. This suit seeks redress on behalf of all consumers that purchased a 21st Century glucosamine and chondroitin supplement from August 20, 2006 to the present that were sold with a label promising that the product "promotes cartilage regeneration."

## PARTIES

4. Plaintiff Lee David Auerbach resides in Chappaqua, New York in Westchester County. In August 2011, Plaintiff purchased the 21st Century dietary supplement "Glucosamine 750 Chondroitin 600 Triple Strength" at a Rite Aid in Chappaqua, New York that included the prominent representation on the front of the label that it "promotes cartilage regeneration." Mr. Auerbach read and reviewed that representation on the label when he purchased the supplement.

5. Defendant 21st Century HealthCare Inc. ("21st Century") is a corporation with its principal place of business in Tempe, Arizona.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named Plaintiff and the Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred within this judicial district, and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## **GENERAL ALLEGATIONS**

8.      Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other. Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint. Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness. These conditions are often extremely painful and result in limitations on an individual's range of motion, and most often impact elderly persons.

9.      In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers have rolled out a variety of products promising relief from chronic pain. Some manufacturers pushing for more market share have not been content to advertise pain relief, and have been making more and more outlandish promises to consumers, including promises that supplements can promote joint health and mobility through structural changes to joints.

10.     Defendant 21st Century, the seller of a wide variety of vitamin, nutritional and dietary supplement products, is one such manufacturer. In fact, one of 21st Century's most successful product lines is promoted as a joint supplement that contains, among other ingredients, glucosamine and chondroitin. These joint supplements are sold nationwide in drug stores using labels that claim to "promote[] cartilage regeneration." 21st Century also maintains a website devoted to marketing its products (www.21stcenturyvitamins.com), where it maintains a web page for each of its glucosamine and chondroitin products. All of those web pages contain, near the top of the textual portion of the page, the prominent claim that the product is "The Natural Choice To Promote Cartilage Regeneration And Support Healthy Joints."

3

11. Glucosamine is an amino sugar that the body distributes in cartilage. It is produced commercially from crustacean exoskeletons, and is one of the most common, non-vitamin dietary supplements sold in the United States. Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars. Chondroitin sulfate is a structural component of cartilage and provides resistance to compression. Neither these ingredients, nor any other ingredients contained in 21st Century's dietary supplements, alone or in combination, are capable of promoting cartilage regeneration.

12. 21st Century's statement that its products "promote cartilage regeneration" is false and misleading. In fact, there is no scientifically sound study demonstrating that 21st Century products can promote cartilage regeneration. As numerous studies have confirmed, neither glucosamine, chondroitin, or any other supplements or ingredients can promote cartilage regeneration:

> a. In February 2006, the New England Journal of Medicine published a report on a double blind study addressing in part the efficacy of ingesting glucosamine hydrochloride 1500mg. Clegg, et al. Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis. New Eng. J. Med. 354:795-808 (Feb. 2006). The study concluded that there was no showing that the supplement was effective in treating osteoarthritis.
>
> b. In February 2008, the Annals of Internal Medicine published a study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis: a Randomized Trial." Annals of Internal Medicine 2008 Feb 19;148(4): 268-277. The article published the results of a study which examined

4

whether glucosamine sulfate has an effect on the symptoms and structural progression of hip osteoarthritis during two years of treatment; the conclusion reached from the study was that glucosamine sulfate was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

c.  In October 2008, the American College of Rheumatology's Journal, Arthritis & Rheumatism, published a report on a double blind study conducted at multiple centers in the United States examining joint space width loss with radiograph films in patients who were treated with glucosamine hydrochloride. The authors concluded that after two years of treatment with this supplement, the treatment did not demonstrate a clinically important difference in joint space width loss. Sawitzke et al., Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?, Artritis Rheum. 58:3183-3191 (2008).

d.  In March 2009, Harvard Medical School published a study conclusively proving that the ingestion of glucosamine could not affect the growth of cartilage. The study took note of the foregoing 2006 and 2008 studies, which "cast considerable doubt" upon the value of glucosamine. The authors went on to conduct an independent study of subjects ingesting 1500 mg of glucosamine, and proved that only trace amounts of glucosamine entered the human serum, far below any amount that could possibly affect cartilage. Moreover, even those trace amounts were present only for a few hours after ingestion. The authors noted that a 1986

5

study had found no glucosamine in human plasma after ingestion of four times the usual 1500 mg of glucosamine chloride or sulphate. Silbert, Dietary Glucosamine Under Question, Glycobiology 19(6):564-567 (2009).

e. In April 2009, the Journal of Orthopaedic Surgery published an article entitled, "Review Article: Glucosamine." The article's authors concluded that, based on their literature review, there was "little or no evidence" to suggest that glucosamine was superior to a placebo even in slowing down cartilage deterioration, much less rebuilding it. Kirkham, et al., Review Article: Glucosamine, Journal of Orthopaedic Surgery, 17(1): 72-6 (2009).

f. In August 2010, the Annals of Rheumatic Diseases published an article recounting a 2-year, double-blind, placebo controlled study of glucosamine and chondroitin. The authors concluded that use of glucosamine and chondroitin do not result in a clinically important difference in joint pain or function as compared with a placebo. Sawitzke, et al., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulfate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, Annals of Rheumatic Diseases 69(8): 1459-64 (2010).

g. In September 2010, BMJ published an article recounting a systemic review of 10 prior glucosamine and chondroitin studies. The authors concluded that "glucosamine, chondroitin and their combination

do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo." Wandel, et. al., Effects Of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Of Hip Or Knee: Network Meta-Analysis, BMJ 2010; 341:c4675.

13. To date, there are only two studies purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine supplement manufacturer: Pavelka et. al. Glucosamine Sulfate Use and Delay of Progression of Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002); Reginster et. al. Long-term Effects of Glucosamine Sulphate On Osteoarthritis Progress: A Randomised, Placebo-Controlled Clinical Trial, Lancet, 357: 251-6 (2001). As noted in the April 2009 Journal of Orthopaedic Surgery article, the methodologies in those studies had "inherently poor reproducibility," and even minor changes in posture by the subjects during scans could cause false apparent changes in cartilage. The authors of the Journal of Orthopaedic Surgery article explained the manufacturer-sponsored studies' findings by noting that "industry-sponsored trials report positive effects more often than do nonsponsored trials and more find pro-industry results." No reliable scientific medical study has shown that glucosamine and chondroitin, alone or in combination, have a structure modifying effect that will promote the regeneration of cartilage that has broken down or worn away.

14. 21st Century thus sells its glucosamine and chondroitin line of products without any competent and reliable scientific evidence that glucosamine, chondroitin and/or other ingredients will promote cartilage regeneration. 21st Century thus lacks a reasonable basis to represent to consumers that its products will promote cartilage regeneration.

7

15. Plaintiff purchased 21st Century "Glucosamine 750 Chondroitin 600 Triple Strength" because he believed, based upon the label, that it would promote the regeneration of the cartilage in his joints. His belief that the product would "promote cartilage regeneration" in his joints was reasonable because 21st Century, as a manufacturer and distributor of dietary supplements throughout the United States, has superior knowledge, skill and expertise (as compared to Plaintiff) to appreciate the truth or falsity of the statement that the product "promotes cartilage regeneration." Mr. Auerbach reasonably relied upon the statement that the supplements would "promote cartilage regeneration" when he purchased the product.

16. Plaintiff would not have bought 21st Century "Glucosamine 750 Chondroitin 600 Triple Strength" if he had known that it would not "promote cartilage regeneration." The 21st Century "Glucosamine 750 Chondroitin 600 Triple Strength" that Plaintiff purchased did not promote the regeneration of his cartilage.

17. Defendant is able to, and does, charge a price premium for its products that it claims "promote cartilage regeneration," over and above other brands of supplements containing similar amounts of glucosamine, chondroitin and the other ingredients contained in Defendant's joint supplements. This price premium is a direct result of Defendant's misrepresentation that its product "promotes cartilage regeneration."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class all persons who purchased in New York State a 21st Century glucosamine and/or chondroitin product with the representation that it "promotes cartilage regeneration" on the label during the period August 20, 2006 through the

8

present. Excluded from the Class are the Defendant (and any parent, subsidiary, or affiliate of the Defendant).

19. This action is brought as a class action for the following reasons:

   a. The Class consists of tens of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law or fact common to the Class which predominate over any questions affecting only individual members, including:

   i. whether Defendant violated N.Y. G.B.L § 349;

   ii. whether Defendant breached its express warranty with Plaintiff and the Class by representing that its products "promote cartilage regeneration" when they do not;

   iii. whether Defendant is being unjustly enriched by its misleading and deceptive misrepresentations;

   iv. whether Defendant's claim that its products "promote cartilage regeneration" is substantiated or supported by any valid scientific evidence;

   v. whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

   vi. whether Defendant should be enjoined from continuing its deceptive conduct;

   c. The claims asserted by Plaintiff are typical of the claims of the members of the Class;

   d. Plaintiff will fairly and adequately protect the interests of the Class, and

Plaintiff has retained attorneys experienced in class and complex litigation, including class action litigation involving state statutes protecting consumers from deceptive acts;

    e.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

    f.    Defendant has acted on grounds that apply generally to the Class, namely promoting its glucosamine and chondroitin products as a supplement that "promotes cartilage regeneration," so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Class as a whole; and

    g.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

        i.    Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers will be harmed, and 21st Century will continue to retain its ill-gotten gains;

        ii.    It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

        iii.    When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the class;

        iv.    A class action will permit an orderly and expeditious administration of Class claims and foster economies of time, effort, and expense;

        v.    The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi. Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

## FIRST CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349)

20. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-19 above as if fully set forth herein.

21. Through its conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

22. Representing that its glucosamine and chondroitin supplement "promotes cartilage regeneration" when there is no competent or reliable scientific evidence substantiating that claim is deceptive, and has the capacity, tendency and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that 21st Century products promote "cartilage regeneration" based upon Defendant's misrepresentations to that effect.

23. Defendant's unfair or deceptive practices are a willing and knowing violation of N.Y. General Business Law § 349 because Defendant knew, or should have known, that the representation that its products "promote cartilage regeneration" was not substantiated or supported by competent and reliable scientific evidence.

24. Plaintiff and the Class have suffered an ascertainable loss of money or property as a result of Defendant's actions. Plaintiff and the Class have been damaged in the amount of the purchase prices for 21st Century products that they paid, or, in the alternative, have been damaged by paying more for such products than for other products containing the same or similar ingredients that do not represent that they will "promote cartilage regeneration."

25. By reason of the foregoing, Defendant has willfully and knowingly violated N.Y. Gen. Bus. Law § 349, and should be enjoined from representing that its products are capable of promoting "cartilage regeneration." Defendant is also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, such damages to be determined at trial but not less than $50.00 for each purchase of Defendant's products, such damages to be trebled, plus attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Breach of Express Warranty)**

26. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-19 above as if fully set forth herein.

27. The representation and warranty that a 21st Century glucosamine and chondroitin product "promotes cartilage regeneration" is an affirmation of fact or promise by Defendant.

28. The natural tendency of 21st Century's promise that its products "promote cartilage regeneration" is to induce buyers such as Mr. Auerbach to purchase Defendant's products.

29. Plaintiff and the Class relied on Defendant's promise that its products "promote cartilage regeneration" when they purchased those products.

30. Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the 21st Century products. The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels. The product labeling constitutes an express warranty which became part of the basis of the bargain. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

31.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product which could "promote cartilage regeneration."

32.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the 21st Century products.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

33.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-19 above as if fully set forth herein.

34.     By marketing its products as being capable of promoting "cartilage regeneration" when they are incapable of doing so, Defendant has unjustly enriched itself at the expense of Plaintiff and the other members of the Class and Defendant is required, in equity and good conscience, to compensate Plaintiff and the Class for the damages that they have suffered as a result of Defendant's actions.

35.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1. Certifying this action as a class action as soon as practicable, with a class as defined above;

2. On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, trebled, and ordering appropriate injunctive relief, including a prohibition against Defendant's use of the false promise that its products "promote cartilage regeneration";

3. On Plaintiff's Second and Third Causes of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

4. Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

5. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: White Plains, New York
August 20, 2012

Respectfully Submitted,

**MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C.**

By: _____
Jeffrey I. Carton
D. Greg Blankinship
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
jcarton@mdpcelaw.com
gblankinship@mdpcelaw.com

*Attorneys for Plaintiff*